FILED
CLERK, U.S. DISTRICT COURT

**07/01/2015**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ LM _____ DEPUTY

1  Elliott R. Rodriguez
2  4216 Wheeler Street
3  Riverside, CA 92503
4  951-315-4744
5  elliott505@gmail.com
6  No Fax

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CALIFORNIA
### EASTERN DIVISION

**ED CV15-01301 VAP** (KKx)

| | |
|---|---|
| Elliott R. Rodriguez | ) CASE NO.: |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| | ) |
| Provident Savings Bank, F.S.B.; | ) **TO ENFORCE THE RESCISSION** |
| Mortgage Electronic Registration Systems, Inc. | ) **UNDER TRUTH IN LENDING ACT** |
| U.S. BANK NATIONAL ASSOCIATION, | ) *15 U.S.C.* 1635, *et seq.* **and/or** 12 *CFR.* |
| AS TRUSTEE FOR CREDIT SUISSE FIRST | ) **226.23 § *et seq.*;** |
| BOSTON CSFB ARMT 2006·1; | ) |
| | ) **TO RETURN THE ORIGINAL NOTE** |
| Defendants | ) **MARKED CANCELLED;** |
| | ) |
| ———————————— | ) **TO RETURN THE ORIGINAL** |
| | ) **MORTGAGE AND RECORD** |
| | **SATISFACTION OF MORTGAGE.** |

**RESTITUTION OF MONIES PAID**
**12 C.F.R. § 1026.23(d)(2)**

Plaintiff, Elliott R. Rodriguez, (hereinafter "Plaintiff" and/or "Rodriguez") complains against all

defendants hereby and alleges as follows:

## I. PRELIMINARY STATEMENT

1.        Plaintiff institutes this action for enforcement of rescission, actual damages and

equitable relief, statutory damages, and the costs of this action against all named Defendants for

multiple violations of the Truth in Lending act, 15 U.S.C. § 1635 et seq., (hereinafter TILA), and

Federal Reserve Board Regulation Z, 12 C.F.R. § 226.23.

2. Promulgated pursuant thereto and as pendent Claims and for Enforcement of Rescission under TILA; Restitution of Assets. Per statutes: Rescission effected per 15 U.S.C. §1635(b), Regulation Z, 12 C.F.R. 226.23(d)(1) and 12 C.F.R. § 1026.23(d)(2).

3. Defendants did not protest or contest this rescission notice as required under § 226.23(d)(2)(3) therefore the loan debt had been forfeited and forever released by Defendants and any others involved by their failure to challenge <u>within 20 days of tender of the rescission</u> of their obligations under 226.23(d)(2)(3) by the end of the 20 day performance period ending on *06/01/2015*. Therefore, under the law there is no enforceable Note or Deed of Trust to be made by Defendants or any other parties involved.

4. The instant suit to enforce the rescission is NOT a suit to make the rescission effective by operation of law. The cancellation of the note and Deed of Trust has already happened by operation of law. The Note and Deed of Trust are void as of the date of mailing of the notice of rescission.

## II. JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331. Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331;

2. The jurisdiction of this court for the first cause of action is invoked pursuant to TILA, 15 U.S.C. § 1640, 15 U.S.C. §1635 and 15 U.S.C. §1611, federal statutes. This court has original jurisdiction pursuant to 12 *CFR.* 226.23.

3. Jurisdiction of this court for the pendent claims is authorized under FED. R. Civ. P. 18(a).

4.     This Court has personal jurisdiction over Defendant(s) and venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions and violations give rise to the Plaintiff's claims occur, committing a acts inside California or outside of California causing injury within California.

### III. THE PARTIES

5.     Plaintiff, Elliott R. Rodriguez is a natural person at all times relevant to this complaint have been the owner and residents of real property located at 4216 Wheeler Street, Riverside, CA 92503.

6.     Defendant Provident Savings Bank, F.S.B., (hereinafter "Provident") is a Stock Corporation located at 3756 Central Avenue, Riverside, CA 92506. Provident is organized under the laws of the United States. Provident is a broker who received commissions for processing the loan documents signed by Rodriguez. Provident pretended to act as a "lender" where in fact they were not.

7.     Mortgage Electronic Registration Systems, Inc., (hereinafter "MERS") MERS is a national registry that tracks the ownership and servicing rights of its members in residential mortgage loans. There are over 6,300 members of MERS. MERS is a wholly-owned subsidiary and an alter ego of MERSCORP Holdings, Inc. MERS also is a Delaware corporation with its principal place of business located at 1818 Library Street, Suite 300, Reston, Virginia 20190. For the purposes of this pleading, reference to MERS includes reference to MERSCORP, Inc., MERS registered agent is the Corporation Trust Company, 1209 N. Orange Street, Wilmington, Delaware 19801. MERS is listed as beneficiary on the deed of trust and as such claims ownership interest as beneficiary in the Plaintiff's property and loan documents and by way of an assignment dated February 20, 2014, from U.S. Bank assigning all interest to MERS.

8.     Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON CSFB ARMT 2006·1 (hereinafter "U.S. Bank") is headquartered at 425 Walnut Street, Cincinnati, OH 45202. However the Trust operations are located at 60 Livingston, Avenue, St. Paul, Minnesota 55051. U.S. Bank claims to have an interest in the Plaintiff's Deed of Trust and property as a Trustee for Credit Suisse First Boston CSFB ARMT 2006·1 trust and by way an assignment dated May 21, 2009 and recorded in the Riverside County under Document No.2009-0275934, the assignment was signed by MERS assigning all beneficial interest in the deed of trust to U.S. Bank as Trustee.  Second assignment dated February 20, 2014, assigns all interest from U.S. Bank to MERS and recorded in the Riverside County under Document No.2014-0070548. It is unknown at this time under what jurisdiction U.S. Bank is organized.

9.     Whenever an act or omission of a corporation or business entity is alleged in this Complaint, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acts or omits to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope and or abuse of their duties, that the act or omission is authorized by corporate managerial officers or directors, and that the act or omission is ratified by the officers and directors of the corporation or business entity, where so reasonably stated, implied and/or inferred.

10.     Any allegation about acts of any corporate or other business means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they are acting within the actual or ostensible scope of or abuse of their authority where so reasonably stated, implied and/or inferred.

11.     At all relevant times, defendants commit the acts, cause or direct others to commit the acts, or permit others to commit the acts alleged in this complaint. At all relevant times, defendants know or realize that they are engaging in or planning to engage in the violations of the laws, the laws of the United States, and Plaintiff's Property Right of Citizens alleged in this Complaint.

12.     Knowing or realizing that defendants are engaging in or planning to engage in unlawful acts nevertheless engage in and/or facilitate the commission of those unlawful acts. Defendants intend to and do engage in and/or encourage, facilitate, and/or assist in the commission of the unlawful acts, and thereby commit and/or aid and abet others in the unlawful violations of Federal law and Plaintiff's Rights under Federal Laws.

13.     Plaintiff invokes Federal Rules of Evidence to govern these proceedings and submits into evidence file the exhibits attached and incorporated hereto pursuant to Federal Rules of Evidence.

## IV. FACTUAL ALLEGATIONS

1.     On September 16, 2005, in anticipation of a home loan in the amount of $245,000, Elliott R. Rodriguez executed a promissory note and security agreement on Plaintiff's personal dwelling, which makes the transaction a consumer credit transaction within the meaning of TILA, 15 U.S.C. §1602 and Regulation Z § 226.26, a true and accurate copy of the combined Note and security agreement a/k/a Deed of Trust is attached and incorporated hereto as **Exhibit A**, and is hereby incorporated by reference.

2.     Upon completion of the signing of the loan documents, Provident has appointed itself a servicer for the alleged loan and in a letter dated October 28, 2005 notified Plaintiff that

"Your present servicer is Provident Savings Bank, F.S.B." "Your new servicer will be America's Servicing Company (ASC)."  The letter is attached and incorporated hereto as **Exhibit B**.

3.      On September 16, 2005 to present, Provident and its successors and assigns violated multiple counts of Truth in Lending Act by failing to disclose to Plaintiff who the true lender is and using subterfuge to hide the fact that Provident acted as a "lender" at closing and were paid to pose as the "lender" when in fact the lender is undisclosed unregistered third party. **As a result the transaction between Plaintiff and Defendants was never consummated.** The limitation on the right to rescind was extended indefinitely. Under federal law, the Deed of Trust is now extinguished and any rights under the Deed of Trust have terminated.

4.      On  May  5,  2015,  Plaintiff  sent  by  certified  mail  return  receipt #70131710000138143235 a Notice of Rescission to Provident as required to affect the requirements to rescind under TILA. The Notice is attached and incorporated hereto as **Exhibit C**. Provident received the Notice of rescission on May 7, 2015. Certified mail and USPS.com confirmation of delivery is attached and incorporated hereto as **Exhibit D**.

5.      At least 20 days passed from the rescission and receipt of notice without Provident or their agent contesting the rescission by filing, as required within 20 days of receipt of the notice, judicially new lawsuit challenging the content of the Notice of Rescission. As a result Provident is (a) in violation of statute, subject to an enforcement suit on their duties under rescission (b) Provident waived any objection to the rescission that should have been brought as their own lawsuit within the 20 days.

6.      As a result of Provident silence, the rescission is affected and fully enforced and Plaintiff is entitled to the benefits and reimbursements accorded under the TILA. The limitation on the right to rescind was extended indefinitely as the transaction was never consummated

1   between Plaintiff and an unknown party lender. Under federal law, the Deed of Trust is now

2   extinguished and any rights under the Deed of Trust have terminated.

3         7.     On May 5, 2015, Plaintiff sent by certified mail return receipt

4   #70131710000138343242 a Notice of Rescission to MERS as required to affect the requirements

5   to rescind under TILA. The Notice is attached and incorporated hereto as Exhibit C. MERS

6   received the Notice of rescission on May 8, 2015. Certified mail and Return Receipt is attached

7   and incorporated hereto as **Exhibit E.**

8         8.     At least 20 days passed from the rescission and receipt of notice without MERS or

9   their agent contesting the rescission by filing, as required within 20 days of receipt of the notice,

10   judicially new lawsuit challenging the content of the Notice of Rescission.

11         9.     As a result of MERS's silence, the rescission is affected and fully enforced and

12   Plaintiff are entitled to the benefits and reimbursements accorded under the TILA. The limitation

13   on the right to rescind was extended indefinitely as the transaction was never consummated

14   between Plaintiff and an unknown party lender. Under federal law, the Deed of Trust is now

15   extinguished and any rights under the Deed of Trust have terminated.

16        10.   On May 5, 2015, Plaintiff sent by certified mail return receipt

17   #70131710000138343259 a Notice of Rescission to U.S. Bank as required to affect the

18   requirements to rescind under TILA. The Notice is attached and incorporated hereto as Exhibit C.

19   U.S. Bank received the Notice of rescission on May 11, 2015. Certified mail and Return Receipt

20   is attached and incorporated hereto as **Exhibit F.**

21        11.   At least 20 days passed from the rescission and receipt of notice without U.S. Bank

22   or their agent contesting the rescission by filing, as required within 20 days of receipt of the notice,

23   judicially new lawsuit challenging the content of the Notice of Rescission.

12.     As a result of U.S. Bank silence, the rescission is affected and fully enforced and Plaintiff is entitled to the benefits and reimbursements accorded under the TILA. The limitation on the right to rescind was extended indefinitely as the transaction was never consummated between Plaintiff and an unknown party lender. Under federal law, the Deed of Trust is now extinguished and any rights under the Deed of Trust have terminated.

## V. FIRST CAUSE OF ACTION FOR ENFORCEMENT OF RESCISSION UNDER 15 U.S.C. § 1635

13.     Plaintiff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

14.     15 U.S.C. § 1635

**(a) Disclosure of obligor's right to rescind**

"Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the **consummation of the transaction**" [bold emphases added]

15.     15 U.S.C. 1635(a) is clear "any consumer credit transaction" that pertains to the principal dwelling **"shall have the right to rescind the transaction"**.

16.     The cancellation of the note and deed of trust has already happened by operation of law on May 8, 2015. The rescission is effective, the note and deed of trust are void as of the date of mailing of the notice of rescission. The instant suit is to enforce the return of the note marked cancelled, reconveyance of the deed of trust and return of all monies paid.

17.     On September 16, 2005, to present, in violation of 15 U.S.C. §1635, Provident and its successors and assigns violated multiple counts of Truth in Lending Act by failing to disclose to Plaintiff the true lender and using subterfuge to hide the fact that the "lender" at closing was paid to pose as the lender when in fact the lender is undisclosed unregistered third party. **No consummation of the transaction took place as one party to the transaction, the actual lender, was not disclosed to Plaintiff.** The limitation on the right to rescind was extended indefinitely. Under federal law, the Deed of Trust is now extinguished and the rights under the Deed of Trust have terminated.

18.     Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower 'shall have the right to rescind ... by notifying the creditor, in accordance with regulations of the Board, of his intention to do so'. The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. The statute does not also require him to sue within three years. It adds: *"It is also true that the Act disclaims the common-law condition precedent to rescission at law that the borrower tender the proceeds received under the transaction.*

19.     Defendants unlawfully collected on a debt that was null and void at inception that now must be returned to Plaintiff plus costs, plus interest, plus escrow charges, closing costs, etc.

20.     Defendants are bound to 15 U.S.C. §1635 that cancels the note and voids the security interest - Deed of Trust recorded in the Official Records of Riverside County on September 27, 2005 as Document No. 2005-0795625.

21.     Plaintiff demands the Note be returned marked: "Cancelled" thereby, effectuating the Nullification and Voiding of Note and Deed of Trust and entered in the Riverside County Records as such, with effective date – *of 05/05/2015.*

22.     Plaintiff demands return of funds paid by Plaintiff to any and all parties such as servicers of the alleged loan. The funds remain unaccounted for by any defendant in spite of the clear lawfully implemented Rescission of the Note by Plaintiff.

23.     15 U.S.C. 1640(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person rescinded under section 1635 of this title, the costs of the action, as determined by the court are recoverable.

24.     Plaintiff may amend this complaint. Filing at this time is to preserve the time limit for exercise of right under 1635(f)(3) prescribed by TILA. (3) ... upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

25.     By reason of the aforesaid violations of the Act and Regulation Z, defendant is liable to plaintiff in the amount of twice the finance charge, actual damages to be established at trial, and costs in accordance with 15 U.S.C. § 1640.

## VI. SECOND CAUSE OF ACTION FOR ENFORCEMENT OF RESCISSION UNDER 12 C.F.R. § 226.23

26.     Plaintiff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

27.     12 C.F.R. § 226.23 –

> (2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. **Notice is considered given when mailed**, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business. [emphases added]

28.     Pursuant to the notice of rescission and the fact that it IS effective upon mailing all Defendants have forfeited their right to challenge the Notice of Rescission.

29.     According to TILA, Reg. Z and the U.S. Supreme Court (Jesinoski v Countrywide Home Loans, Inc.) decision the rescission IS effective by operation of law the moment it is put in US Mail.

30.     There is no other interpretation of "effective" because the Supreme Court under the annoyed pen of Justice Scalia has said there is nothing to interpret. When the rescission was mailed it was effective BY OPERATION OF LAW.

31.     Notwithstanding that Plaintiff had full right to rescind the transaction and recall their loan documents back, Plaintiff does not have to be right to send it. THAT issue is left to the true creditors to allege in a lawsuit to vacate the rescission. And they must do so within 20 days.

32.     On May 5, 2015, Plaintiff affected the rescission by mailing the notice to Provident, MERS and U.S. Bank, the parties have received the notice on May 7, 2015, May 8, 2015 and May 11, 2015 respectively.

33.     On September 16, 2005, to present, in violation of 15 U.S.C. §1635, Provident and its successors and assigns violated multiple counts of Truth in Lending Act by failing to disclose to Plaintiff the true lender and using subterfuge to hide the fact that the "lender" at closing was paid to pose as the lender when in fact the lender is undisclosed unregistered third party. **No consummation of the transaction took place as one party to the transaction, the actual lender, was not disclosed to Plaintiff.** The limitation on the right to rescind was extended indefinitely. Under federal law, the Deed of Trust is now extinguished and the rights under the Deed of Trust have terminated.

34.     At no time after the execution of the Note or Deed of Trust *were* closing documents called "material disclosures" as described in TILA given to or made available to the Plaintiff from the true creditors.

35.     The issue of Plaintiff's Right to rescind the alleged loan and its cancellation as alleged herein, under 12 C.F.R. 226.23(h) has been settled by operation of law and a January, 2015 U.S. Supreme Court case, referenced herein.

36.     During the 20 days, the duties of the parties on the notice are clear: (1) return the canceled note (2) file a reconveyance of Deed of Trust and (3) return all money paid by Plaintiff. If the patties to the notice fail to do that they have violated the statute.

37.     Defendant(s) and their successors and assigns have violated the statute, and failed to (1) return the canceled note (2) file a reconveyance of Deed of Trust and (3) return all money paid by borrower.

38.     If defendants take issue with whether the rescission should be effective this way, they would have had to file a lawsuit within the 20 days allowed for performing the duties under TILA (see above). If they want to say the statute of limitations has run, they must do it in a lawsuit filed within the 20 days. Otherwise the window closes and in this case it did close.

39.     The Defendants in this action neither individually or jointly and/or severally nor their agents or assigns by their non-performance of C.F.R. 226.23(d)(2) within the 20 day performance period following tender of the Rescission as provided in 12 C.F.R. 226.23(d)(2) have as a matter of law waived any defense or claims which effects the loan cancellation.

40.     Thus, the right of defendants to challenge the Rescission by Plaintiff is legally barred by operation of the statute of Limitation inherent in TILA which in pertinent part states:

> *12 CFR 226. 23(d){2)*
> Within 20 calendar days after receipt of a notice of rescission, the creditor **shall return any money or property that has been given to anyone in connection with the transaction** and shall take any action necessary to reflect the termination of the security interest. [bold emphases added]

41.     The return of the original Note in the amount of $245,000 has NOT been effected by any defendant to date and the sums remain unpaid.

42.     The reconveyance of the original Deed of Trust has NOT been effected by any defendant to date.

43.     The recent unanimous decision by the Supreme Court of the United States, Jesinoski v. Countrywide Home Loans. Inc . No. 13-684 on January 13, 2015 overturned all contrary decisions by the circuit courts of appeals, states in pertinent part and:

> "Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower 'shall have the right to rescind ... by notifying the creditor, in accordance with regulations of the Board, of his intention to do so' (emphasis added). The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. The statute does not also require him to sue within three years." It adds: *"It is also true that the Act **_disclaims_** the common-law condition precedent to rescission at law that the borrower tender the proceeds received under the transaction... " Ibid*

44.     Defendants unlawfully collected on a debt that was null and void at inception that now must be returned to Plaintiff plus costs, plus interest, plus escrow charges, closing costs, etc.

45.     Defendants are bound to the agreement with the Federal Reserve Board and Regulation Z that cancels the note and voids the security interest - Deed of Trust recorded in the Official Records of Riverside County on September 27, 2005 as Document No. 2005-0795625.

46.     a. Plaintiff demands the Note be returned marked: "Cancelled" thereby, effectuating the Nullification and Voiding of Note and entered in the Riverside County Records as such, effective with the *date – of 05/05/2015*.

47.     Plaintiff demands return of funds paid by Plaintiff to any and all parties such as servicers of the alleged loan. The funds remain unaccounted for by any defendant in spite of the clear lawfully implemented Rescission of the Note by Plaintiff.

48.     15 U.S.C. 1640(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person rescinded under section 1635 of this title, the costs of the action, as determined by the court are recoverable.

49.     Plaintiff may amend this complaint. Filing at this time is to preserve the time limit for exercise of right under 1635(f)(3) prescribed by TILA. (3) ... upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

50.     By reason of the aforesaid violations of the Act and Regulation Z, defendant is liable to plaintiff in the amount of twice the finance charge, actual damages to be established at trial, and costs in accordance with 15 U.S.C. § 1640.

## VII. THIRD CAUSE OF ACTION – THE TRANSACTION WAS NEVER CONSUMMATED

51.     Plaintiff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

52.     Under the Truth in Lending Act, 15 U.S.C. §1635, et seq. and 12 C.F.R 226.23, et seq. Plaintiff are entitled to rescind the promissory Note and Deed of Trust per 15 U.S.C. §1635 as alleged, *supra*.

53.     Pursuant to 15 U.S.C. § 1635(f) "An obligor's right of rescission shall expire three years after the date of consummation of the transaction…"

54.     Pursuant to 12 C.F.R. § 226.2(a)(13).

(13)    *Consummation* means the time that a consumer becomes contractually obligated on a credit transaction.

55.     Under Regulation Z, which specifies a lender's disclosure obligations, "consummation" of the loan occurs when the borrower is "contractually obligated." 12 C.F.R. §226.2(a)(13).

56.     The point at which a "contractual obligation ... is created" is a matter of **state law**. 12 C.F.R. pt. 226, Supp. 1 (Official Staff Interpretation), cmt. 2(a)(13). Under California law, a contract is formed when there are (1) two or more parties capable of contracting, (2) mutual consent, (3) a lawful object, and (4) sufficient consideration.

57.     Under TILA, the Courts must look to state law in determining when a borrower becomes contractually obligated on a loan.  At the very least, before you can have a contract, there must be specifically identified parties to the contract (meaning an identified lender and identified borrower) – "parties capable of contracting" as set forth above and sufficient consideration.

58.     On September 16, 2005, Provident posed as a loan "originator" posing as a "lender" and as the loan originator did not affect the actual loan but rather, someone else or some other entity is the funding and/or lending and/or table funding the loan.  In the instant case, Provident the purported originating "lender", purporting to contract to "lend" Plaintiff money, did not actually lend Plaintiff any money or credit.  Provident misrepresented its status as a "lender" and did nothing more than earn a commission on the money someone else allegedly was lending i.e. some Wall Street investor in a loan pool who is funding the loan, who is NOT IDENTIFIED AT ANY STAGE OF THE LOAN PROCESS INCLUDING THE PRESENT TIME.

59.     On September 16, 2005, Provident misrepresented to Plaintiff that it was the "Lender", the material misrepresentation was made and it was not in accordance with the facts, the misrepresentations included the meaning of words and conduct and/or concealed and/or did not disclose a material fact.

1  the misrepresentations included the meaning of words and conduct and/or concealed and/or did

2  not disclose a material fact.

3        60.     It is fraudulent if the maker intends for the assertion to induce assent and knows it

4  is incorrect.  Plaintiff is justified in relying on a material misrepresentation and/or fraudulent

5  assertion.  Courts recognize the date of signing a binding loan contract as the date of

6  consummation when the lender is *identifiable*."

7        61.     Under these circumstances, the loan is not "consummated" until the actual lender

8  is identified, because until that point there is no legally enforceable contract.

9        62.     In the instant case where Plaintiff enter into a contract based on a belief as to a

10  intentionally misrepresented material fact underlying the terms of the agreement, the contract is

11  rescinded to the extent that there was no "meeting of the minds" necessary to validate the

12  agreement.

13        63.     Provident acted as intermediary "originator" who made false representations to

14  the effect that they are "lending money" and are Plaintiff's "lender" and is not be sufficient to set

15  the three year TILA rescission clock in motion.

16        64.     Due to the fact that the true source of the table funded loan is NOT identified, the

17  loan has not "consummated" and under TILA and the three year right to rescind remains open.

18  That is TRUTH IN LENDING which is the whole point of TILA in the first place.

19  ### VIII. FOURTH CAUSE OF ACTION – ENFORCEMENT OF RESTITUTION

20  ### 12 C.F.R. § 1026.23(d)(2)

21        65.     Plaintiff alleges and incorporates by reference each of the preceding paragraphs as

22  if fully set forth in this paragraph.

23        66.     Under the Truth in Lending Act, 15 U.S.C. §1635, et seq. and 12 C.F.R 226.23, et

24  seq. Plaintiff is entitled to rescind the promissory Note and Deed of Trust per 15 U.S.C. §1635 as

1  alleged, *supra*.

2      67.    TILA allows a borrower to rescind a loan up to three years after the transaction

3  was consummated, the loan is not "consummated" until the actual lender is identified, because

4  until that point there is no legally enforceable contract.

5      68.    On May 5, 2015, Plaintiff properly and effectively exercised the right to rescind

6  by sending the Notice of Rescission to all defendants via Certified Return Receipt U.S. Mail.

7      69.    Plaintiff alleges that all defendants refused to acknowledge the rescission,

8  continued to act as if the rescission was never sent and defrauded Plaintiff as a result by

9  damaging his ownership rights, Property Rights of Citizens, credit and right to act in violation of

10  the act and Plaintiff is entitled to damages and an order to return the original Note marked

11  "cancelled", reconvey the deed of trust and with restitution of all sums paid to anyone claiming

12  to be a "lender" and/or a servicer and/or their agents.

13      70.    If defendants want to say that Plaintiff rescinded a loan that could not be

14  rescinded under TILA, they had to do it in lawsuit filed within the 20 days of receiving the

15  Notice. All defendants failed to challenge the notice in any way, thus they waived their right to

16  any defenses under the law. Any defense that was not timely raised has been waived by all

17  defendants.

18      71.    For associated **Declaratory Relief** that the Note and Deed of Trust are rescinded

19  and cancelled, that all assets Plaintiff prove has been paid under the Note be restored forthwith to

20  Plaintiff in the sum of not less than $107,953.74 plus all closing costs not less than $4,611.83

21  and for statutory assessments, attorney fees and costs associated in both damages, and equitable

22  relief TILA calls out.

**Page 17 of 19**

WHEREFORE, Plaintiff respectfully request that judgment be entered in his favor and against all defendants as follows:

1. Return of the Original Note marked Cancelled;

2. Return of the Original Deed of Trust;

3. Filing Reconveyance of Deed of Trust in the Records of Riverside County;

4. Award actual damages to be established at trial pursuant to 15 U.S.C. § 1640(a)(I);

5. Award statutory damages in the amount of twice the finance charge not to exceed $1000 per violation or the statutory maximum whichever is greater in accordance with 15 U.S.C. § 1640(a)(2);

6. Award plaintiff costs and reasonable attorney's fees in accordance with 15 U.S.C.§ 1640;

7. Award Plaintiff costs and reasonable attorney's fees in accordance with 15 U.S.C.§ 1640 for defending against all actions in state and/or federal courts to protect his property;

8. For the Note and Deed of Trust and Restoration of money's kept to which defendants are not entitled in the sum of $112,565.57;

9. For Restoration of escrow fees, costs and assessments;

10. For restoration of all closing costs;

11. For such other relief as the court deems appropriate;

12. For Compensatory damages;

13. For Emotional distress;

14. For Legal Fees, Court Costs;

15. For Actual damages.

1    Dated: June 29, 2015                          Respectfully submitted by:

2

3                                                  Elliott R. Rodriguez
4                                                  4216 Wheeler Street
5                                                  Riverside, CA 92503
6                                                  951-315-4744
7                                                  elliott505@gmail.com
8

FWT

Recording Requested By:
**Provident Savings Bank, F.S.B.**

Return To:
Provident Savings Bank, F.S.B.
3756 Central Avenue
Riverside, CA 92506

Prepared By:
Provident Savings Bank, F.S.B.

33306584JW

DOC # 2005-0795625
09/27/2005 08:00A Fee:63.00
Page 1 of 19
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|----- |-------|-----|-------|
|   |   |   | 1    | 19   | 1  |      |       |     |       |
| A | R | L |      |      |    | COPY | LONG  | REFUND | NCHG | EXAM |
|   |   |   |      |      |    |      |       | | | ac |

[Space Above This Line]

## DEED OF TRUST

MIN 100045700888065182

63

T

---

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 16, 2005 together with all Riders to this document.
(B) "Borrower" is

~~ELLIOTT R. RODRIGUEZ, A MARRIED MAN; AS HIS SOLE AND SEPARATE PROPERTY~~

Borrower's address is 4216 WHEELER STREET
RIVERSIDE, CA 92503                    . Borrower is the trustor under this Security Instrument.
(C) "Lender" is Provident Savings Bank, F.S.B.

Lender is a Federal Corporation
organized and existing under the laws of the United States of America

222-88806518

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15                    Initials:
VMP MORTGAGE FORMS - (800)521-7291

**Exhibit A**

20

Lender's address is 3756 Central Ave., Riverside, CA     92506

(D) "Trustee" is Provident Financial Corp., a California Corporation

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated September 16, 2005
The Note states that Borrower owes Lender two hundred forty-five thousand and 00/100
                                                                                            Dollars
(U.S. $245,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following *Riders are to be executed by Borrower [check box as applicable]:*

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

222-88806518

-6A(CA) (0207)                                    Page 2 of 16                         Form 3005  1/01

**Exhibit A**

21

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of RIVERSIDE :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
LOT 2 OF TRACT MEDCO CALIFORNIA HOMES, AS SHOWN BY MAP ON FILE IN BOOK 38, PAGE(S) 29, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

Parcel ID Number: 193-062-025-4                    which currently has the address of
4216 WHEELER STREET                                                          [Street]
RIVERSIDE                                      [City], California 92503          [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                              Page 3 of 16          Initials:          222-88806518    Form 3005   1/01

**Exhibit A**

22

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

222-88806518

**Exhibit A**

23

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



222-88806518

**Exhibit A**

24

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

222-88806518

**Exhibit A**

25

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

222-88806518

**Exhibit A**

26

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(CA) (0207)          Page 8 of 15          Initials          Form 3005  1/01

222-88806518

Exhibit A

27

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

222-88806518

Initials:

Exhibit A

28